KOLLER LAW LLC
By: David M. Koller, Esq.
Attorney ID No. 90119
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
(215) 545-8917

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT DONOVAN**<br>1523 S Mole Street,<br>Philadelphia, PA 19146<br>Plaintiff, | : <br> : <br> : <br> : <br> : | |
| v. | : <br> : | _____ TERM 20____ |
| **A-VALLEY ENGINEERS, INC.**<br>**AND LOTHAR BUDIKE, SR.**<br>1137 Atlantic Avenue<br>Camden, NJ 08104 | : <br> : <br> : <br> : <br> : | CASE NO. |
| 506 Georgetown Road,<br>Wallingford, PA 19086<br>Defendants. | : <br> : <br> : | |

## COMPLAINT

Plaintiff Robert Donovan, by and through his attorney, brings this civil matter against Defendant A-Valley Engineers, Inc. and Lothar Budike, Sr. alleging he was subject to unlawful retaliation in violation of the Pennsylvania Workers Compensation Act and unlawful violation of the Fair Labor Standards Act ("FLSA"), and avers and alleges as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding introductory paragraph as if set forth more fully at length herein.

2. Plaintiff, Robert Donovan (hereinafter "Plaintiff"), is an adult individual who is domiciled in the Commonwealth of Pennsylvania at the address listed above.

1

3. Defendant, A-Valley Engineers, Inc. and Lothar Budike, Sr. employed Plaintiff at the address listed above.

4. At all times relevant hereto, Defendants employed manager, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in a pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The facts and circumstances which gave rise to this Complaint occurred in and around Camden County and therefore jurisdiction and venue are proper in this Court.

## MATERIAL FACTS

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. In 2003, Defendant hired Plaintiff as a Senior Project Manager.

10. Plaintiff earned $25 per hour in this position.

11. On average, Plaintiff worked between 60 and 70 hours per week.

12. Upon his hire, Defendant issued Plaintiff a company vehicle and company identification badge.

2

13. In early 2014, Lothar Budike, Sr., Owner, informed Plaintiff that he was going to change his employment status from an employee of Defendant into an independent contractor.

14. Mr. Budike stated the reason for this was because he planned to retire soon and once he did, Plaintiff would be able to take over Defendant's contract with the Philadelphia International Airport with his own company.

15. Along with the change of Plaintiff's employment status, Plaintiff would then earn $8,000 per month instead of his hourly rate.

16. Due to this change in compensation, Plaintiff earned less money per year than he did as an hourly employee.

17. In or around the spring of 2015, Plaintiff began to suffer from shoulder swelling, pain, and discomfort.

18. On April 7, 2015, Plaintiff went to see Dr. Adrienne Willard, Plaintiff's Primary Care Physician, at Hahnemann University Hospital to have his shoulder examined.

19. Dr. Willard advised Plaintiff to treat his should pain with Naproxen to eliminate the inflammation and to return if his shoulder pain continued.

20. However, Plaintiff continued to experience severe pain in his right shoulder, so much so that it prohibited him from sleeping.

21. On November 23 2015, Plaintiff returned to Dr. Willard for treatment of the severe pain in his right shoulder.

22. Dr. Willard referred Plaintiff to Dr. James Tom, Orthopaedic Specialist, at Hahnemann University Hospital.

23. On December 1, 2015, Plaintiff attended an appointment with Dr. Tom.

24. At this appointment, Dr. Tom diagnosed Plaintiff with a possible torn labrum in his right shoulder and scheduled him for an MRI arthrogram that same day.

25. On December 22, 2015, Plaintiff returned to Dr. Tom for a follow up appointment and it was determined that his shoulder condition had not changed.

26. On December 28, 2015, Plaintiff returned to Dr. Tom and was diagnosed with a torn labrum and infraspinatus in his right shoulder from the findings of the MRI arthogram.

27. Dr. Tom scheduled Plaintiff for surgery to repair the torn labrum and infraspinatus in his right shoulder on January 15, 2016.

28. That same day, Plaintiff reported to work and notified Mr. Budike of his torn labrum diagnosis and that he would be required to have surgery on January 15, 2016.

29. Mr. Budike instructed Plaintiff not to file a Workman's Compensation claim and stated that Plaintiff could complete paperwork in the office.

30. On January 15, 2016, Plaintiff underwent surgery to repair his torn labrum. The surgery was conducted by Dr. Tom.

31. Following Plaintiff's surgery, he underwent physical therapy three (3) times per week.

32. On January 19, 2016, Plaintiff returned to work at Defendant and performed administrative tasks that did not require physical exertion.

33. On or around May 1, 2016, Plaintiff began working in a physically laborious capacity again.

34. On May 1, 2016, Plaintiff was working at the Philadelphia International Airport as per Defendant's contract.

35. Plaintiff was in the midst of pulling a heavy hose when he heard a pop in his right shoulder, followed by intense pain.

4

36. On May 2, 2016, Plaintiff called Mr. Budike that he would be late for work because he had to go to physical therapy.

37. While at physical therapy, Plaintiff was in intense pain and could not perform the exercises that he was able to do prior to May 1, 2016.

38. Later that day, Plaintiff reported to work at Defendant and informed Mr. Budike that he had injured his shoulder the day before and would have to go to his Orthopaedic Specialist, Dr. Tom.

39. On May 10, 2016, Plaintiff was evaluated by Dr. Tom who performed another arthrogram on Plaintiff's right shoulder.

40. That same day, Plaintiff reported to work at Defendant and informed Mr. Budike of his diagnosis and of the possibility of a second surgery.

41. Mr. Budike stated to Plaintiff that he "cannot trust these doctors" and recommended that Plaintiff get a second opinion.

42. On May 24, 2016, Plaintiff returned to Dr. Tom who informed him that he had re-torn his labrum in his right shoulder based upon the findings of the MRI arthrogram.

43. Dr. Tom recommended to Plaintiff that he continue physical therapy for one (1) month and if that did not improve his right shoulder, that he would need surgery again.

44. Plaintiff informed Mr. Budike that if his right shoulder required surgery, he would wait until after Defendant's busy season, the summer, to get the surgery.

45. In or around the end of May 2016, Plaintiff saw Dr. Mark D. Lazarus, Orthopaedic Specialist, at the Rothman Institute for a second opinion.

46. Dr. Lazarus concluded that Plaintiff has re-torn his labrum in his right shoulder and also recommended one (1) month of physical therapy before undergoing surgery to repair it.

47. The following day, Plaintiff reported Dr. Lazarus' diagnosis to Mr. Budike in person.

48. In the end of May 2016, Plaintiff noticed that Mr. Budike had been weaning him off of his job duties since around the middle of the month.

49. Mr. Budike was contacting Plaintiff's subordinates directly instead of having Plaintiff direct the work duties, as he usually did.

50. Plaintiff asked Mr. Budike about his work being decreased and was informed by Mr. Budike that he was taking care of Plaintiff's shoulder.

51. In early June 2016, Mr. Budike informed Plaintiff that there was an investigation regarding criminal conspiracy charges regarding Defendant at Philadelphia International Airport.

52. Mr. Budike stated that because of this investigation, Plaintiff was removed from working at the Philadelphia International Airport.

53. Around the same time, Mr. Budike notified Plaintiff that he was going to be required to return his identification badge for Defendant and create an identification badge with Plaintiff's own company.

54. On or around June 13, 2016, an email was sent out by Mel Hannah, Vice President and General Manger of Marketplace PHL, to Tish Petrucci, Account Manager of Marketplace PHL, stating that he had spoken with Mr. Budike and that Plaintiff was no longer an employee of Defendant.

55. On or around June 15, 2016, Plaintiff reported to work at Defendant's location but, the locks had been changed and his keys did not work.

56. Plaintiff immediately called Mr. Budike and inquired about the changed locks.

57. Mr. Budike informed Plaintiff that he would speak with him eventually but, that there was no need to report to the office until they spoke.

58. On June 21, 2016, Plaintiff was seen by Dr. Tom and it was determined that he would require a second surgery on his right shoulder. Physical therapy had not helped Plaintiff's right shoulder.

59. At the end of the June 2016, Plaintiff met Mr. Budike at the Sunoco Gas Station located at 2601 Penrose Avenue, Philadelphia, PA 19145.

60. At this meeting, Mr. Budike informed Plaintiff that he needed things to "calm down" regarding the investigation at the Philadelphia International Airport before bringing him back to work.

61. Defendant did not contact Plaintiff again or send him a termination letter.

62. Defendant constructively terminated Plaintiff following his second injury while working for Defendant.

## COUNT I – WRONGFUL TERMINATION

63. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully at length herein.

64. Plaintiff was an at-will employee with Defendant.

65. Defendant terminated Plaintiff following his second injury at work in fear of him filing a Workman's Compensation claim.

66. This is a violation of the at-will employment doctrine in Pennsylvania and state law.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – FAILURE TO PAY OVERTIME
## FAIR LABOR STANDARDS ACT

67. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth fully at length herein.

68. Plaintiff was hired as an hourly employee by Defendant.

69. Plaintiff consistently worked over 40 hours in a week.

70. Defendant misclassified Plaintiff as an independent contractor to avoid paying Plaintiff the appropriate overtime.

71. Plaintiff was an employee and is due and owed overtime pay.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Robert Donovan, requests that the Court grant him the following relief against Defendant:

a) Damages for past and future monetary losses as a result of Defendant's wrongful termination;

b) Compensatory damages;

c) Punitive damages;

d) Liquidated damages;

e) Emotional pain and suffering;

f) Reasonable attorneys' fees;

g) Recoverable costs;

h) Pre and post judgment interest;

i) An allowance to compensate for negative tax consequences;

j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from

Plaintiff's record of employment, including, but not limited to, the pre-textual reasons cited for his adverse actions, disciplines, and termination; and

k) Awarding any/all other extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder.

Respectfully Submitted,

KOLLER LAW LLC

Dated: 6/5/17          By:  David M. Koller

David M. Koller, Esquire
*Attorney for Plaintiff*